**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**MISSISSIPPI FARM BUREAU                                                                               PLAINTIFF
CASUALTY INSURANCE COMPANY,
INDIVIDUALLY AND AS EQUITABLE
SUBROGEE OF THE CONLAN COMPANY**

**V.                                                         CIVIL ACTION NO.: 3:11-CV-706-CWR-FKB**

**AMERISURE INSURANCE COMPANY                                                        DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Amerisure Insurance Company's amended motion for summary judgment [Docket No. 36]. The Court, after reviewing the motion, briefs of the parties, and relevant law, finds that the motion must be GRANTED.

**I. FACTUAL AND PROCEDURAL HISTORY**

This action is a dispute regarding whether Plaintiff Mississippi Farm Bureau Casualty Insurance Company ("Farm Bureau") may recover costs from Amerisure Insurance Company ("Amerisure") for expenditures relating to Farm Bureau's defense of the Conlan Company ("Conlan") in an Alabama state court lawsuit brought by Billy Joe and Patricia Whittington (referred to as "the Whittington lawsuit").

In the Whittington lawsuit, Billy Joe Whittington alleged that on November 14, 2008, he stopped at a truck stop near a construction site in Mobile County, Alabama. *See* Docket No. 40-1. When he walked onto the construction site, he was confronted by Robert Watkins, who worked for Conlan at the site. A verbal exchange between the two ensued, and Whittington suffered injuries to his leg. He claims that Watkins drove towards him and "swiped" him with Watkins' truck. *Id.* at 4.

The Whittingtons filed suit against Watkins and Conlan in the Circuit Court of Mobile

County, Alabama, on November 12, 2010. *See id.* at 1. The complaint contains four counts. The first count alleges "negligence and/or wantonness" against Watkins and Conlan resulting from Watkins' operation of his vehicle while in the course and scope of his employment with Conlan. *Id.* at 4. The second count alleges negligent and wanton supervision, hiring, and training against Conlan. *Id.* at 5. The third count is a loss of consortium claim against both Watkins and Conlan asserted by Patricia Whittington, and the final count alleges "wantonness" against both defendants. *Id.* at 6-7.

Farm Bureau insured Robert and Becky Watkins under a personal automobile policy. That policy provides liability limits of $25,000 per person and $50,000 per accident. Conlan was insured by Amerisure. After Amerisure hired the law firm of Bratton Rainey to defend Conlan in the Whittington lawsuit, Amerisure and Conlan made demand on Farm Bureau to pay for Conlan's defense, asserting that Conlan qualified as an insured under the Farm Bureau policy.

Farm Bureau agreed to assume Conlan's defense only as to counts one and three of the complaint. Farm Bureau sent letters to Amerisure asserting Farm Bureau's position that Amerisure was responsible for the costs associated with defending Conlan against counts two and four. However, Amerisure claims, based on statements by Rainey, that there was "no reasonably accurate way to distinguish between or pro-rate the defense costs" of the claims that were covered by the Farm Bureau policy and those which were not. Docket No. 37, at 2. Thus, Amerisure refused to pay any portion of Conlan's defense costs, and Farm Bureau ultimately paid all costs associated with defending Conlan, including the cost of defending counts two and four.

The Whittington lawsuit proceeded before a jury, and on March 18, 2011, the court entered a final judgment in favor of Billy Joe Whittington and against Watkins in the sum of

2

$20,000; there was no verdict against Conlan.  Docket No. 36-10, at 2.  On May 31, 2011, the court granted Whittington's motion for a new trial as to Watkins due to the inadequacy of the damage award, but denied Whittington's motion for a new trial as to Conlan, finding that "there was sufficient evidence for the jury to conclude that, at the time that Watkins inflicted the injury, he was acting for reasons solely personal to himself and had abandoned" Conlan's work.  Docket No. 36-10, at 3-4.

On October 20, 2011, Farm Bureau filed the instant action against Amerisure in the County Court of Rankin County, Mississippi, seeking to recover its costs in defending Conlan in the Whittington lawsuit for claims that Farm Bureau alleges were not covered under its policy. Amerisure removed the action to this Court on November 17, 2011, on the basis of diversity jurisdiction.  On September 4, 2012, Amerisure filed its motion for summary judgment [Docket No. 32], which it amended on September 5, 2012 [Docket No. 36].  In its motion, Amerisure argues that Farm Bureau was responsible for providing Conlan's entire defense in the Whittington lawsuit, and alternatively, even if Farm Bureau were not required to defend Conlan against all claims, it cannot now receive reimbursement from Amerisure due to the doctrines of volunteer payment, collateral estoppel, waiver, and/or judicial estoppel.  *See* Docket No. 37, at 4-7.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party," *St. Amant v.*

3

*Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citation omitted), and a fact is material if it is one that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. Fed. R. Civ. P. 56(c)(1). When evaluating a motion for summary judgment, a court refrains from making credibility determinations and does not weigh evidence or draw from the facts legitimate inferences for the movant. *Strong v. Dep't of Army,* 414 F. Supp. 2d 625, 628 (S.D. Miss. 2005).

### III. ANALYSIS

Amerisure's motion for summary judgment presents four issues: (1) whether Farm Bureau had a duty to defend Conlan, the employer of Farm Bureau's named insured, against counts two ("Negligent and Wanton Supervision, Hiring and Training") and four ("Wantonness") of the underlying Whittington lawsuit; (2) whether Farm Bureau voluntarily defended Conlan against counts two and four; (3) whether the doctrines of collateral estoppel, waiver, and/or judicial estoppel prevent Farm Bureau from seeking reimbursement from Amerisure for costs incurred while defending Conlan in the lawsuit; and (4) whether the costs for Conlan's defense could be reasonably apportioned between claims covered under the Farm Bureau policy and noncovered claims.

Because this case is proceeding in diversity, the applicable substantive law is that of the forum state, Mississippi. *Capital City Ins. Co. v. Hurst*, 632 F.3d 898, 902 (5th Cir. 2011). State law is determined by looking to the decisions of the state's highest court. *St. Paul Fire & Marine Ins. Co. v. Convalescent Servs., Inc.*, 193 F.3d 340, 342 (5th Cir. 1999).

As explained below, according to Mississippi law, Farm Bureau did not have a duty to

4

defend Conlan against counts two and four of the Whittington complaint. Farm Bureau voluntarily provided Conlan a defense on counts two and four, and, therefore, cannot recover any portion of the defense costs from Amerisure. As such, the Court need not reach the remaining issues.

  A. Duty to Defend

Under Mississippi law, Farm Bureau's policy provided primary coverage for its insured, Robert Watkins, who owned the vehicle that was involved in the incident giving rise to the Whittington lawsuit. *See Travelers Indem. Co. v. Chappell*, 246 So. 2d 498, 505 (Miss. 1971) (providing that the insurance policy issued to the owner of the vehicle involved in an accident is the primary policy). The parties dispute whether, based on the terms of the policy, Farm Bureau had a duty to defend Conlan, Watkins' employer at the time of the incident, against the Whittington lawsuit's claims for "negligent and wanton supervision, hiring and training" and "wantonness."

Whether an insurance company has a duty to defend depends on the language of the insurance policy and the allegations of the complaint. *E.E.O.C. v. S. Publ'g Co.*, 894 F.2d 785, 789 (5th Cir. 1990) (citation omitted) ("In determining an insurer's duty to defend its insured, Mississippi has adopted 'the allegations of the complaint' rule."); *Evanston Ins. Co. v. Neshoba Cnty Fair Ass'n, Inc.*, 442 F. Supp. 2d 344, 346 (S.D. Miss. 2006) (citation omitted) (stating that to determine whether an insurer has a duty to defend, "the court compares 'the words of the complaint with the words of the policy'"). "The duty to defend is broader than the duty to indemnify," and it arises if a "complaint alleges facts which are arguably within the policy's coverage." *Evanston*, 442 F. Supp. 2d at 346 & n.1. Therefore, regardless of whether a complaint's allegations ultimately prove to be meritorious, an insurance carrier has a contractual

duty to furnish a legal defense "whenever a lawsuit filed against an insured contains an allegation or claim which is covered under the policy." *Moeller v. Am. Guarantee & Liab. Ins. Co.*, 707 So. 2d 1062, 1069 (Miss. 1996) (citation omitted). However, an insurance company "clearly has no duty to defend a claim outside the coverage of the policy." *Id.*; *see also S. Publ'g Co.*, 894 F.2d at 790-92 (concluding that insurance company had duty to pay defense costs relating to tort claims for which coverage was available under multi-peril insurance policy, but not Title VII claims, for which no coverage was available). Therefore, to determine which claims Farm Bureau had a duty to defend, the Court looks to the allegations of the complaint in the underlying litigation and the terms of the insurance policy Farm Bureau issued to Watkins.

The relevant language of the Farm Bureau insurance policy states, under the "Liability Coverage" section, that Farm Bureau "will pay damages for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident and arising out of the ownership, maintenance or use of any covered auto" and "will settle or defend, as [it] consider[s] appropriate, any claim or suit asking for these damages." Docket No. 32-8, at 10 (emphasis omitted). However, the policy states that Farm Bureau "ha[s] no duty to defend any suit or settle any claim for bodily injury or property damage not covered under this policy." *Id.* (emphasis omitted). The policy specifies that the term "insured" includes

1. You or any family member for the ownership, maintenance or use of any auto or trailer.
   . . .
3. For any covered auto, any person or organization, but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

*Id.* (emphasis omitted). The "Definitions" section of the policy defines "you" and "your" as the "named insured shown in the Declarations" and the named insured's spouse, if a resident of the

6

same household. *Id.* at 6.

According to the policy's third definition of "insured," *supra*, Conlan is an insured under Watkins' policy due to the Whittingtons' allegations that Conlan is liable for Watkins' actions based on the theory of respondeat superior. *See id.* at 10; Docket No. 40-1, at 5. However, the limiting language of the third definition of "insured," "but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded," unambiguously provides that a person or organization becomes an insured under this definition only if he or it is vicariously liable for the conduct of an insured person under the policy. *See* Docket No. 32-8, at 10; *Guidant Mut. Ins. Co. v. Indem. Ins. Co. of N. Am.*, 13 So. 3d 1270, 1281-82 (Miss. 2009) (holding, in case involving similar definition of "insured," that volunteer fire department was an insured under an insurance policy where the theory of the underlying complaint was that the fire department was legally responsible for the acts or omissions of a fireman who was working in the course of his duties). Thus, Conlan is an insured under Watkins' policy with respect to Conlan's liability arising from Watkins' "acts or omissions," but not with respect to Conlan's liability for its own acts or omissions. *See* Docket No. 32-8, at 10.

Several courts in other jurisdictions have interpreted similar provisions in this manner. *See Mid-Century Ins. Co. v. Heritage Drug, Ltd.*, 3 P.3d 461, 462-63 (Colo. App. 1999) (rejecting parents' contention that they had coverage as "persons or organizations" having "legal liability" for the acts or omissions of their daughter under car insurance policy for which their daughter was the only named insured, when "the claim of negligent entrustment brought against [the parents] was not based on vicarious liability, but on their own alleged negligence"); *Lightning Rod Mut. Ins. Co. v. Cole*, No. 3:10-CV-00428-WCL, 2012 WL 4355535, at *8 (N.D. Ind. Sept. 21, 2012) (holding that defendant could not be considered an insured based on her

7

"legal responsibility for acts or omissions" of her daughter because the plaintiffs' negligent supervision and negligent entrustment claims sought to hold defendant responsible for her own negligence, not her daughter's acts); *State Farm Mut. Auto. Ins. Co. v. S. Trust Ins. Co.*, No. M2011-02727-COA-R3-CV, 2012 WL 5240257, at *5-6 (Tenn. Ct. App. Oct. 23, 2012) (concluding that because negligent entrustment claims against defendant were not based upon acts or omissions of a person covered under the policy, but were based upon the defendant's own acts or omissions, the insurance policy at issue did not cover the negligent entrustment claims).

In an attempt to support its argument that Farm Bureau was required to defend all four claims, Amerisure relies on *Meyers v. Mississippi Insurance Guaranty Association*, 883 So. 2d 10 (Miss. 2003), a case arising out of an automobile accident in which the Mississippi Supreme Court analyzed whether a commercial general liability insurance policy's exclusion for bodily injury "arising out of the ownership, maintenance, use or entrustment to others of any . . . auto" excluded from coverage a plaintiff's negligent management and negligent hiring claims. *Id.* at 13-14 (quotation marks omitted). The court held that the automobile exclusion applied to bar coverage for the negligent management and negligent hiring claims, noting that the "controlling case law in Mississippi is clear: claims of negligent entrustment, negligent supervision, and failure to train will not be recognized as independent acts of negligence sufficient to allow coverage under insurance policies . . . with an auto-exclusion where the damages arise out of the use of an automobile." *Id.* at 16.

According to Amerisure, *Meyers* suggests that the negligent hiring and negligent supervision claims in the Whittington lawsuit are inherently "related to the acts of . . . Watkins." Docket No. 37, at 5. Amerisure's reliance on *Meyers* is misplaced because the language of the automobile exclusion in *Meyers* is inapposite to the policy's language at issue in the present case.

8

The Farm Bureau policy does not make Conlan an insured for all claims "arising out of the ownership, maintenance, use or entrustment" of an automobile, *Meyers*, 883 So. 2d at 14 (quotation marks omitted), but instead makes Conlan an insured "only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded . . . ." Docket No. 32-8, at 10. The policy's language is unambiguous, and therefore, it must be construed exactly as written. *See Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382 (5th Cir. 1998).

Because Conlan is only an insured under the Farm Bureau policy for claims involving Conlan's vicarious liability for Watkins' conduct, Farm Bureau had no duty to defend Conlan against count two, which involved allegations of Conlan's "negligence and/or wantonness in the employment, supervision, hiring and training of Defendant Watkins." Docket No. 40-1, at 5.

Farm Bureau also maintains that it did not have a duty to defend Conlan against count four because the wantonness claim "contemplates intentional acts that are excluded under the policy." Docket No. 32-6, at 9. Under Alabama law, which applied to the Whittingtons' claims in the underlying lawsuit, "wantonness" is defined as "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Jordan ex rel. Jordan v. Calloway*, 7 So. 3d 310, 316-17 (Ala. 2008). The Alabama Supreme Court has held that wantonness requires a showing of a conscious and intentional act or omission, although it is not essential to prove that the defendant had intent to injure the plaintiff. *See Galaxy Cable, Inc. v. Davis*, 58 So. 3d 93, 101 (Ala. 2010); *Alfa Mut. Ins. Co. v. Roush*, 723 So. 2d 1250, 1256 (Ala. 1998).

The fourteenth exclusion of the Farm Bureau policy states that Farm Bureau will not pay

9

for "[l]oss resulting from the intentional acts by you or any act carried out at your direction. The expected and unexpected results of this action or direction is not covered." Docket No. 32-8, at 22. Therefore, the Whittingtons' wantonness claim was excluded from coverage under Farm Bureau's policy because it alleges that Conlan consciously and intentionally committed an act or omitted a duty. Consequently, Farm Bureau had no duty to defend Conlan against count four. *See Moeller*, 707 So. 2d at 1070-71 (noting that insurance company owed insured a legal defense for defamation claim only, but not claims that were outside the coverage of the policy).[1]

  B.  Voluntary Payment

Amerisure argues that even if Farm Bureau had no duty to defend Conlan against counts two and four of the Whittington complaint, Farm Bureau is not entitled to reimbursement for the cost of defending Conlan against those claims because Farm Bureau voluntarily defended all of the claims. Under Mississippi's voluntary payment doctrine, "a voluntary payment can not be recovered back, and a voluntary payment within the meaning of this rule is a payment made without compulsion, fraud, mistake of fact, or agreement to repay a demand which the payor does not owe, and which is not enforceable against him, instead of invoking the remedy or defense which the law affords against such demand." *McDaniel Bros. Constr. Co. v. Burk-Hallman Co.*, 175 So. 2d 603, 605 (Miss. 1965) (quoted in *Genesis Ins. Co. v. Wausau Ins. Cos.*, 343 F.3d 733, 736 (5th Cir. 2003)). An insurer that makes a payment under "protest" or after

---

[1] Both Amerisure and Farm Bureau cite *E.E.O.C. v. Southern Publishing Co.*, 894 F.2d 785 (5th Cir. 1990), in concluding that the feasibility of apportioning the defense costs is determinative of Farm Bureau's duty to defend. However, the *Southern Publishing* court analyzed only the "allegations of the complaint" in determining the insurance company's duty to defend. *See id.* at 789-91. The court considered proration of costs on the issue of damages, and only to address the insured's argument that because the insurer had "wrongfully denied coverage, it was obligated for the full cost" of the insured's defense. *See S. Publ'g Co.*, 894 F.2d at 788, 791 n.3 ("Normally, our conclusion that Southern Guaranty owed a duty to defend the slander claim would pretermit our consideration of the proration issue until the district court had determined whether to award Southern Publishing the costs of defending the slander claim and, if so, the amount of such costs. However, because . . . the final judgment already includes an award for the cost of defending the slander claim, we will address the proration issue.").

providing "a unilateral reservation of rights will not escape the application of the volunteer doctrine." *Genesis*, 343 F.3d at 736.  However, "[p]ayments that are made by virtue of legal obligation or by accident or mistake are inherently involuntary."  *Id.* at 738.

Farm Bureau does not allege that it defended Conlan against claims outside of the policy's coverage because of fraud, mistake of fact, or the existence of an agreement regarding repayment of defense costs.  However, it suggests that it should not be considered a volunteer payor because "at the time that the payments were made, Farm Bureau possibly had an obligation to pay the defense costs."  Docket No. 41, at 11.  Farm Bureau's uncertainty about whether it was required to pay for Conlan's entire defense arose from its lack of clarity about whether the defense costs could be apportioned between the claims covered under the Farm Bureau policy, and those not covered under the policy.  *See id.*  Farm Bureau asserts that if the costs could not be readily apportioned, it was responsible for bearing the entire cost of defense.  *See* Docket No. 41, at 7-8.

Additionally, Farm Bureau argues that "since Amerisure was refusing to provide a defense for Conlan, Farm Bureau was left in a position where it would have severely prejudiced the defense of Conlan Company if Farm Bureau had also refused to pay defense costs for the claims not covered under the Farm Bureau policy."  Docket No. 41, at 11.  Therefore, by defending Conlan against all claims, Farm Bureau asserts that it "protected the interest of the common insured and reserved the right to later seek reimbursement from Amerisure."  *Id.*  Essentially, Farm Bureau alleges that it was compelled to defend Conlan against the claims that were not covered by the Farm Bureau policy.

The Fifth Circuit, however, has noted, while interpreting Mississippi law, that "[n]ot all pressure for payment amounts to compulsion."  *Genesis*, 343 F.3d at 739.

11

> [W]here a person pays an illegal demand, with full knowledge of all the facts which render the demand illegal, without an *immediate and urgent necessity to pay*, unless it is to release his or her person or property from detention or to prevent an immediate seizure of his or her person or property, the payment is voluntary. It is only when, in an emergency for which a person is not responsible, the person is compelled to meet an illegal exaction to protect his or her business interest that he or she may recover the payment, but if, with knowledge of the facts, that person voluntarily takes the risk of encountering the emergency, the payment is voluntary and may not be recovered.

*Id.* (quoting 66 Am. Jur. 2d § 109 (emphasis added)).

In *Genesis Insurance Co. v. Wausau Insurance Cos.*, President Casino and its comprehensive general liability insurer, Genesis, argued that they were compelled to settle a state court lawsuit brought against the casino by a patron who was struck by a casino shuttle bus because, less than two months before trial, the business automobile insurer that had been defending the lawsuit, Wausau, notified President of its intention to deny coverage on a premises liability claim, thereby leaving President and Genesis little time to mount an adequate defense. *Id.* at 738. Before contributing to the settlement of the patron's case, President and Genesis filed an action in the United States District Court for the Southern District of Mississippi, seeking a declaration that the Wausau policy covered the entire state court litigation, including the premises liability claim, with the Genesis policy providing only excess insurance over and above the $1,000,000 primary coverage afforded by the Wausau policy. *See id.* at 734. After settlement of the patron's lawsuit, Wausau asserted that President and Genesis could not seek reimbursement for their contribution to the settlement because their contribution was voluntary, not compelled. *See id.* at 735. The Fifth Circuit agreed that President's and Genesis' contribution to the settlement was not compelled, noting that President and Genesis were faced with one of two options after Wausau expressed an intention to deny coverage on the premises liability claim:

12

>   (1) contributing $200,000 immediately to a settlement; or (2) allowing the [state] case to go to trial, and waiting for a ruling in the declaratory judgment action, at which point they would be held responsible for a certain percentage (estimated from 0%-50%) of the damages (that Genesis feared could reach $1 million) as determined by a jury for whom they had little time to prepare.

*Id.* at 739.

This dilemma, the court, concluded, lacked "the sense of immediacy often accompanied by compelled payments." *Id.* The court also concluded that what was at stake if President and Genesis refused to participate in the settlement was "of an insufficiently dire magnitude to justify finding that their settlement contributions were compelled." *Id.* at 739-40 (stating that a "payment is considered coerced only where it is made to avoid the loss of a necessity, or to prevent an injury to a person, business or property which is different and disproportionately greater than the unlawful demand," and citing *Dreyfus v. Ameritech Mobile Comm., Inc.*, 700 N.E.2d 162, 165-66 (Ill. App. Ct. 1998), and *Alcoa Steamship Co. v. Velez*, 285 F. Supp. 123, 125 (D. Puerto Rico 1968 ) (holding that employer's payment of workmen's compensation insurance premium, when faced with alternative of losing all coverage in respect to *all* operations, was compelled)). The court reasoned that "[s]urely, the prospect of paying a maximum, as estimated by President and Genesis, of $1,000,000 between them after the jury returned its verdict, and all appeals (of both the state case and [the declaratory judgment] action) had been exhausted, did not threaten to have such 'a disastrous effect to business' that President and Genesis, two national corporations, one of whose business was to insure against precisely these kinds of judgments, felt compelled to contribute to the . . . settlement." *Id.* at 740. In concluding that President's and Genesis' contribution to the state court settlement was not compelled, the court declined to carve an exception to the Mississippi volunteer doctrine based on the "inadequacy of the legal remedy," the declaratory judgment action filed by President and

13

Genesis.  *Id.* ("We therefore decline to make a predictive statement on Mississippi's behalf approving of and applying an exception for those who pursue their available legal remedies and yet in good faith make what is alleged to be an unjustly demanded payment in their best interest.").

Similar to Genesis, Farm Bureau's predicament when it decided to pay for Conlan's defense on all four claims lacked the sense of urgency necessary to suggest that Farm Bureau was compelled to defend Conlan against claims outside the scope of the policy.  Farm Bureau could have demanded that Conlan's counsel provide invoices that apportioned costs between the covered and noncovered claims, and paid only the portion of Conlan's legal bill that was attributable to counts one and three.  Alternatively, Farm Bureau could have hired a different attorney who was willing to apportion the time between covered and noncovered claims if Rainey would not do so.  In addition, when the dispute arose regarding the extent of Farm Bureau's duty to defend, Farm Bureau could have sought an opinion from separate counsel on this issue.  *See Baker Donelson Bearman & Caldwell, P.C. v. Muirhead*, 920 So. 2d 440, 447 (Miss. 2006). Furthermore, it could have filed a declaratory judgment action seeking a determination that Farm Bureau was not required to defend Conlan for counts two and four.  Such an action may have resolved any uncertainties Farm Bureau had about whether reasonable apportionment of costs was possible.  By exercising none of these options, Farm Bureau failed to utilize the legal means available to it to resist Amerisure's and Conlan's demands for Conlan's full defense.  *See McLean v. Love*, 157 So. 361, 362 (Miss. 1934) (relied upon by *Hensarling v. Regions Bank*, No. 3:11CV149TSL-MTP, 2012 WL 2839687, at *2-3 (S.D. Miss. July 10, 2012)) ("[W]here an unjust demand has been made upon a party, a demand for a debt which he does not owe, or for more than he owes, he must, when he knows or ought to know the facts,

14

avail of the means which the law affords him to resist the demand, and if he do[es] not, and make[s] the payment demanded, he has not taken due care."). Thus, Farm Bureau neglected to take due care of its interests, and cannot now avoid the application of the voluntary payment doctrine, despite its good faith effort to protect Conlan's interests. *See id.*; *Mobile Telecomm. Techs. Corp. v. Aetna Cas. & Sur. Co.*, 962 F. Supp. 952, 956 (S.D. Miss. 1997) ("There was a legal remedy available to Aetna in the form of a declaratory judgment action by which it might have sought an adjudication of the proper amount of reasonable legal fees and costs.").

Instead of litigating the issue of the scope of its duty to defend, Farm Bureau chose to pay for Conlan's entire defense while continuing to send letters to Amerisure protesting payment of costs for defending counts two and four. However, payment under protest does not permit Farm Bureau to escape the volunteer payment doctrine. In order to avoid the volunteer doctrine, Farm Bureau was required to enter into an agreement with Amerisure to litigate, at a future date, their respective obligations to defend Conlan, with any excess payments to be reimbursed by the other insurer. *See Genesis*, 343 F.3d at 736-38 (concluding that issue of fact existed regarding whether the parties had agreed to litigate coverage issues following settlement); *Liberty Mut. Fire Ins. Co. v. Fireman's Fund Ins. Co.*, 235 F. App'x 213, 221 (5th Cir. 2007) (unpublished) (finding that there was insufficient evidence of a mutual agreement to litigate coverage issues subsequent to settlement, and therefore, claims were barred by voluntary payment doctrine). Farm Bureau does not present any evidence that it made such an agreement.

Farm Bureau's assertion that it did not know if a court would require it to pay for Conlan's entire defense due to the possibility that the costs might not be readily apportioned between the covered and noncovered claims also does not present a situation of compulsion. If Farm Bureau had chosen to defend only counts one and three, and a court later determined that

15

Farm Bureau should have paid for the defense of all four counts, the worst case scenario is that Farm Bureau would have been required to reimburse Conlan and/or Amerisure for the cost of defending the remaining two counts, perhaps with interest and fees, and Farm Bureau may have been subjected to a bad faith claim. *See Muirhead*, 920 So. 2d at 451 ("[W]here an insurer makes the decision not to provide a defense to its insured, it runs a substantial risk of a later determination that a defense should have been provided. Such decisions, absent an arguable, reasonable basis, can result in a finding of bad faith."). The financial risk Farm Bureau would have undertaken is analogous to the estimated $1,000,000 potential payout that the Fifth Circuit suggested in *Genesis* was not enough "to have such 'a disastrous effect to business'" that the casino and insurance company should have felt compelled to contribute to settling the claims against the casino. *See Genesis*, 343 F.3d at 740. Therefore, Farm Bureau's circumstances did not compel it to defend Conlan's noncovered claims; Farm Bureau volunteered to do so without properly reserving its right to later seek reimbursement from Amerisure.

In its attempt to support its position that it did not volunteer to defend Conlan against counts two and four, Farm Bureau relies on *State Farm Mutual Automobile Insurance Co. v. Allstate Insurance Co.*, 255 So. 2d 667 (Miss. 1971). In *State Farm*, the Mississippi Supreme Court analyzed whether the volunteer payment doctrine applied when both State Farm and Allstate were contractually obligated under their respective policies with the insured to defend, negotiate, and settle claims against the insured, and when State Farm was forced to settle a claim against the insured without Allstate's participation because Allstate refused to contribute. *See id.* at 668-69. The court concluded that State Farm was not a volunteer because it was not a "stranger or intermeddler who ha[d] no interest to protect and [was] under no legal or moral obligation to pay." *Id.* at 669. Rather, based on the policy it issued to the insured, State Farm

16

was a co-primary insurer that "was under a solemn obligation to defend its insured" and to negotiate and settle claims made against the insured. *Id.* Therefore, the court refused to "reward" Allstate for "breaching its contract with its insured by refusing to defend him in any manner," and concluded that the volunteer payment doctrine was inapplicable. *Id.* Accordingly, State Farm was not precluded from recovering from Allstate half of all sums paid in settlement of claims against the insured. *See id.* at 668-69.

*State Farm* is distinguishable from Farm Bureau's facts because, unlike the insurer in *State Farm*, Farm Bureau had no contractual obligation to provide Conlan a defense for counts two and four. Therefore, Farm Bureau qualifies a voluntary payor. Farm Bureau's lack of a contractual obligation to defend Conlan against counts two and four also distinguishes this case from those in which a secondary or excess insurance carrier steps in to provide a defense to an insured when the primary insurer refuses to do so. *See, e.g.*, *Guidant Mut. Ins. Co. v. Indem. Ins. Co. of N. America*, 13 So. 3d 1270, 1280-82 (Miss. 2009); *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 601 F. Supp. 286, 287-91 (S.D. Miss. 1984); *State Farm Mut. Auto. Ins. Co. v. Commercial Union Ins. Co.*, 394 So. 2d 890, 891-95 (Miss. 1981). In such cases, when the secondary or excess insurer, by the terms of its policy, is contractually obligated to defend the insured, it is not considered a voluntary payor when it takes on the role that the primary insurer wrongfully refuses. *See Universal*, 601 F. Supp. at 287-91 (discussing *Commercial Union*, 394 So. 2d at 891-95).

Because Farm Bureau had no contractual obligation to defend Conlan against counts two and four, but chose to do so without exercising the legal remedies available to it to resist Conlan's and Amerisure's demands for Conlan's full defense, Mississippi's volunteer payment doctrine bars Farm Bureau from recovering costs from Amerisure in this action.

17

## IV. CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment is GRANTED.[2]

**SO ORDERED**, this the 24th day of January, 2013.

                                                s/ Carlton W. Reeves
                                                UNITED STATES DISTRICT JUDGE

---

[2] As a result of this ruling, all other outstanding motions [Docket Nos. 33, 44, 58, 65, 66] shall be denied as moot.